284 So.2d 301 (1973)
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, AFL-CIO, LOCAL UNION 710, Defendant-Appellant,
v.
HOWARD L. BYRD BUILDING SERVICE, INC. and Regional Contractors, Inc., Complainants-Appellees.
No. 47195.
Supreme Court of Mississippi.
October 22, 1973.
Sykes, Lindsey & Caranna, Ltd., Gulfport, for defendant-appellant.
Campbell, DeLong, Keady, Robertson & Hagwood, Greenville, for complainants-appellees.
*302 PATTERSON, Justice:
The International Association of Bridge, Structural and Ornamental Ironworkers, AFL-CIO, Local Union 710 (hereinafter Union) appeals from a decree of the Chancery Court of Washington County which made permanent an injunction prohibiting Union from picketing the job site where Howard L. Byrd Building Service, Inc. and Regional Contractors, Inc. (hereinafter Byrd and Regional) were constructing a waste water treatment facility for the city of Greenville.
On April 21, 1970, the Mississippi Water Pollution Control Commission found the city of Greenville's municipal sewage system to be discharging effluents into Lake Ferguson and the Mississippi River in violation of Section 7106-120(a), Mississippi Code 1942 Annotated (1956). The commission ordered the city to have an approved municipal waste treatment plant in operation before July 1, 1972.
In response the city entered into a contract for the construction of a waste water treatment plant with Byrd and Regional. Under its terms all work was to be completed by October 2, 1972. On February 12, 1971, after construction was under way, Byrd and Regional discharged thirteen ironworkers, six of whom were members of the union, since the major portion of the iron construction work was completed. The employees' release was in accord with the contractors' plan to reduce their labor force when this phase of the ironwork was finished.
On February 22, 1971, thereafter, Union posted a picket line at the entrance to the project site. As a result several union men, including crane operators essential to construction, did not report for work. Truck drivers from freight lines also refused to cross the picket line to deliver essential materials. The result of the picket was essentially a total work stoppage.
On February 24 Byrd and Regional, without notice to Union, upon posting a $1000 bond, obtained from the chancery court a preliminary writ of injunction prohibiting Union from picketing the project site. In obedience to the injunction the pickets were removed and working conditions returned to normal.
A final hearing was held thereafter on the injunction. It was stipulated that Byrd and Regional were engaged in interstate commerce within the meaning of Section 2 of the National Labor Relations Act of 1947 in excess of $50,000 per year and that the defendant Union was a labor organization within the act.
The evidence of Byrd and Regional was that the only purpose of the picket line by Union was to mandate the reemployment of the union ironworkers and to obtain an agreement from them to bargain with the union as representatives of their employees, it being admitted that the ironworkers had been hired without regard to union membership. The evidence of Union was that the purpose of the picket line was to reinstate their men, to obtain an agreement with Byrd and Regional for the use of union workers and to obtain for them the prevailing wage scale of $6.05 per hour as paid in Louisiana rather than the scale of $5.65 per hour in Mississippi. No dispute exists that on February 12, 1971, Byrd and Regional needed only four ironworkers for their construction work.
At the conclusion of the trial a final decree was entered making permanent the preliminary writ of injunction. This appeal is from such decree. It challenges the jurisdiction of the court as well as the court's refusal to increase the bond on Union's motion.
State jurisdiction in the field of labor relations has to a great extent been preempted by the passage of the National Labor Relations Act. The exceptions to preemption are labor controversies accompanied with violence or mass picketing requiring the states to invoke their police powers for the welfare of the public. The *303 doctrine of federal preemption has, of course, been discussed by the United States Supreme Court. In Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), the use of a state injunction to prohibit picketing was considered. The decision of the Supreme Court of Pennsylvania denying the petitioners an injunction was affirmed. The United States Supreme Court had the following to say concerning preemption:
Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies... . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so... . (346 U.S. at 490-491, 74 S.Ct. at 165-166, 98 L.Ed. at 239-240).
This position was reaffirmed in equally strong language in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), in which the court was confronted with the problem of determining the extent to which state regulations must yield to federal authority when a particular activity which is regulated by the states is also governed by Sections 7 and 8 of the National Labor Relations Act. It concluded that when an activity is arguably subject to Sections 7 or 8 of the act, the state, as well as inferior federal courts, must defer to the exclusive jurisdiction and competence of the National Labor Relations Board. The Court reasoned this to be necessary to avoid the danger of state interference with the national policy promulgated by Congress.
As recently as 1971 these decisions were reexamined and reaffirmed in Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473. Thus, the latest expression of the United States Supreme Court on the issue is that if a controversy is arguably a labor dispute within Sections 7 or 8 of the National Labor Relations Act, state jurisdiction is preempted. The more recent decisions of this Court are in accord. Hattiesburg Building & Construction Trades Council v. Mississippi Mechanical Contractors, 207 So.2d 99 (Miss. 1968), and Hattiesburg Building & Construction Trades Council v. Chain Electric Company, 209 So.2d 924 (Miss. 1968).
The appellees acknowledge these decisions and the rule pronounced. They urge, however, that an exception in addition to those permitting state intervention in picketing accompanied by violence and mass picketing be engrafted upon the rule. Their contention is that in the event the welfare of the public is endangered by the pollution of its streams or when its ecology is adversely affected, necessary construction to rectify the ecological transgressions for the benefit of the public outweighs the requirement of federal preemption thought necessary for uniform application of the National Labor Relations Board rules and decisions. This argument was evidently persuasive to the trial court since it held it had jurisdiction of the labor dispute.
*304 The argument for jurisdiction is advanced primarily upon Cox, Labor Law Preemption Revisited, 85 Harvard Law Review 1337 (1972), and the dissenting opinions found in Lockridge, supra. Though the allure of the argument is conceded, we nevertheless resist it. It is our firm opinion that the court's proper function is better preserved by following the decisions as written rather than calculating the probability of federal sanction of an additional exception to the preemption rule. The former lends itself to stability in law; the latter is likely to confuse by indulging in an official opinion the likelihood of less federal preemption rather than the same or more in the future. We are therefore compelled to state that the activities of Union in establishing the picket line were arguably within Sections 7 and 8 of the National Labor Relations Act and that the state court had no jurisdiction to enjoin its picketing activity.
A condition precedent to the issuance of a preliminary injunction is that the party at whose instance the injunction is granted must post bond in a form and amount to be determined by the issuing court. Miss.Code 1942 Ann. § 1337 (1956), and Morris v. Trussell, 144 Miss. 343, 109 So. 854 (1926). The bond is mandatory. Its amount is within the sound discretion of the chancellor and his decision will not be disturbed on appeal unless this discretion has been abused. Broome v. Hattiesburg Building & Trades Council, 206 So.2d 184 (Miss. 1967). We are unable to state from this record that the amount of the bond here was the result of such abuse. We therefore do not disturb it.
For the reasons stated we are of the opinion the lower court was without jurisdiction and that the injunction was wrongfully issued.
Reversed and remanded.
All Justices concur.